### 384. BUSH *v.* FOURCHER.

1. The verdict of a jury should not be set aside upon the assignment of error that it is without evidence to support it, if there is any evidence to support it, unless it be further made to appear, (*a*) that some ruling of the court improperly withheld evidence from the jury, (*b*) or illegally permitted the jury to consider testimony which should not have been submitted to them, or (*c*) that the court's instructions, as applied to the evidence, were erroneous, inapplicable, or misleading.
2. The evidence authorized the verdict.
3. Books of account may be introduced in evidence, even though it may not have been shown that the merchant or other proprietor kept no clerk. Such books may tend to support the credit of the plaintiff before the jury, and, for the purpose of corroboration, they may be admitted. The mere fact that a book is kept in ledger form is not a valid objection to its admission as a book of original entries; and even if the ledger in this case was not a book of original entries, its admission was harmless to the defendant, as the entries thereon tended

only to prove facts already submitted to the jury by other means in the testimony. The books contemplated by the Civil Code, § 5182, are permanent books. Irrregularities in books of account sought to be introduced in evidence "should be exceedingly gross, and palpable, to justify the court in arresting the evidence from that tribunal whose peculiar province it is to judge of the credibility of testimony." *Bower* v. *Smith*, 8 *Ga.* 77. Where it appears from the record that prior to the admission of the books, the plaintiff and his clerk and bookkeeper were thoroughly examined in the presence of the court with reference to them (the nature of such examination rendering a thorough examination of the books necessary in view of the court), and that the judge had ample opportunity to inspect them, he will be presumed to have seen and to have been satisfied that they were free from any suspicion of fraud.

4. A trial judge is not required to give in charge to the jury the contents of a written request, if any portion thereof is erroneous. No complaint can be made where the judge presents to the jury that portion of the request which is legal, and omits and declines to charge the portion of the request which is not in accordance with law.

5. One who claims that another was liable for the hire of his automobile, used without his knowledge and consent, is only entitled to recover reasonable hire for its actual use, as found by the jury. In the absence of any contract between parties, the question whether he who used the automobile did or did not "make a practice of doing so " would be immaterial.

5. The charge excepted to in the fifth ground of the motion, while inapt in expression, is not sufficiently erroneous, when considered with other instructions of the court upon the same subject, to require the grant of a new trial.

Complaint, from city court of Richmond county—Judge Eve. February 8, 1907.

Argued June 20,—Decided November 25, 1907.

*C. E. Dunbar*, for plaintiff in error. *Oswell R. Eve*, contra.

Russell, J. The defendant in error, a locksmith and repairer of bicycles and automobiles, sued the plaintiff in error upon an open account, and the jury returned a verdict for the plaintiff, for $181.65. The verdict was less than the amount sued for. The original petition alleged an indebtedness of $152.75, but was amended so as to read $186.65.

The alleged indebtedness was claimed to be due on account of certain repairs and material furnished in the repairing of the defendant's automobile and bicycle during a period of seven months of the year 1905. He filed an answer denying the indebtedness and setting up a counter-claim for $600, for hire and dam-

ages to the automobile.   After the verdict in favor of plaintiff, the defendant filed a motion for a new trial, which was overruled, and he excepts to the judgment overruling the motion.   The evidence for the plaintiff shows that he was authorized and instructed to repair defendant's automobile and bicycle; that the defendant placed the automobile with him with direction to put the machine in repair and sell it; that he, following the instructions, put the machine in working order and endeavored to dispose of it.   He testified (and his testimony was corroborated by other witnesses), that Bush knew that the repairs were being made upon the machine; and that they were done with Bush's full knowledge and consent.   Plaintiff's witnesses testified that the repairs upon the bicycle were done on instructions from Bush's office by telephone and messenger, and, from time to time, bills were presented to Bush without his objecting to any items therein or to their correctness.

1, 2. The first and second grounds in the motion for new trial aver that the verdict is contrary to law and the evidence, and contrary to justice and equity.   There was conflict in the evidence. The jury settled the issues of fact by preferring the testimony for the plaintiff, and it was sufficient to authorize their finding.   In a court for the correction of errors, the verdict of a jury should not be set aside upon the assignment of error that it is without evidence to support it, if there is any evidence to support it, unless it be further made to appear, (*a*) that some ruling of the court improperly withheld evidence from the jury, (*b*) or illegally permitted the jury to consider testimony which should not have been submitted to them, (*c*) or that the court's instructions, as applied to the evidence, were erroneous, inapplicable, or misleading.   We held, in a former automobile case from Augusta, *Murphy* v. *Meacham,* 1 *Ga. App.* 155 (57 S. E. 1046): "The case depending upon disputed issues of fact arising from conflicting evidence, the settlement of which is solely for the jury, and the verdict having been approved by the trial judge, the judgment of the court below will not be disturbed."

3. The third ground of the motion for new trial alleged the improper admission of the books of account of the plaintiff, under §5182 of the Civil Code.   The books were properly and legally admitted.   The conclusion of the opinion in *Petit* v. *Teal, 57 Ga.*

148, cited by plaintiff in error, itself sustains the ruling, the language of Judge Bleckley, who delivered the opinion, being as follows: "As a party to the suit, though competent, is, nevertheless, liable to be discounted by the jury in credibility, by reason of his interest, and as his books may tend to support his credit, there may be use for them for that purpose; *and for that purpose, if for no other,* there may be reason to admit them." The plaintiff had a clerk and bookkeeper who was qualified to testify, and who was introduced as a witness by him, and who testified as to the books and the nature and manner in which they were kept, and as to each item as it appeared charged upon the books to the defendant,—as to who made the entries, who sold the goods, etc. Consequently, there was no necessity of proof upon the part of the plaintiff that he kept no clerk, or that his clerk was dead or otherwise inaccessible, or that for any reason his clerk was disqualified from testifying. The introduction of the clerk answered the requirement, showing that the plaintiff did have a clerk, and that he was neither dead nor inaccessible. The fact that the plaintiff kept a clerk and bookkeeper, and that the clerk and bookkeeper testified, did not preclude him from introducing the books of account for the purpose of corroboration. 2 Enc. Ev. 662 (*g*). The introduction of the clerk and bookkeeper, and of the books themselves, was proper. It was held in *Bagley* v. *Robinson,* 57 *Ga.* 148, that though the person who kept the books is or can be examined, the books themselves can also be admitted; and in *Day* v. *Crawford,* 13 *Ga.* 510, it is said: "Let the clerk prove the books who made the entries in the due course of business."

In the case at bar all the parties to the transaction were present at the trial and testified as to their connection therewith, and the correctness of the same; the machinist who did the work, the clerk who sold the goods, the party who charged the items, the bookkeeper who sold some of the goods and kept the books, all testified; there were no missing links in the evidence. It can not be maintained that because the clerk, the proprietor, the machinist and the bookkeeper were all present and testified, the books themselves can not be introduced. The books in such cases as this may not be immediate proof of the correctness of the account, but may be corroborative evidence of the other testimony as to the correctness of the account, and are admissible as a part of the

res gestæ. 1 Greenleaf, Ev. (15th ed.) §117. See *Dunlap* v. *Hooper*, 66 *Ga.* 211. The account was made up of numerous items, covering a period of nearly a year, of goods furnished and work done by numerous persons and charged upon the books by different persons; and in the interest of fairness and justice to the defendant, it was proper that the history of each item be placed before the jury. That could not be done better than by introducing the books. A number of the plaintiff's customers testified as to the correctness of the books; even one of the jurors trying the case. In the case of *McDonald* v. *Truluck*, 27 *Ga.* 366, the clerk and the proprietor testified, and the books were admitted also. The ruling in *Hinkle* v. *Smith*, 127 *Ga.* 437 (3) (56 S. E. 464), is based upon the decision in the *Truluck* case; and our ruling accords with that in each of these cases. The book presented in evidence was a book of original entries. Both the daily memorandum books and the book in which the items were transferred were introduced. In fact, all of the books connected with the transaction were introduced for the jury's consideration. The witness for the plaintiff swore that the book of original entries was introduced. See *Dunlap* v. *Hooper*, 66 *Ga.* 214 (2). A number of witnesses testified as to the correctness of the books. In *Bracken* v. *Dillon*, 64 *Ga.* 250 (37 Am. R. 70), cited by counsel for plaintiff in error, the Supreme Court says: "Mere temporary memorandum books used by the salesmen, and transferred nightly from penciled entries of theirs to the permanent ink book of the daily sales, are not the books of original entries so as to exclude such permanent book, but the latter is the book contemplated by the statute." In some instances a ledger may be one's only permanent book. The book introduced was the "permanent ink book," the "book contemplated by the statute." The other books were also introduced, to prove the correctness of each item. In *Dodd* v. *Mayson*, 39 *Ga.* 608, it was held that the blotter was the book of original entries, and the court stated that the blotter and also the ledger should have gone to the jury in that case, together with the evidence of all the witnesses who had sworn. A book of original entries may be kept in any form; memoranda on shingles have been admitted. "The mere fact that a book is kept in ledger form is not a valid objection to its admission as a book of original entries." 9 Am. & Eng. Enc. Law (2d ed.), 922.

The books were properly presented to the court for inspection, and the court admitted them; consequently the court deemed them free from any suspicion of fraud. Prior to the admission of the books, the plaintiff and his clerk and bookkeeper were closely cross-examined by counsel for defendant as to the books, and a thorough examination of the books was made in the presence of the court. Not the slightest suspicion of fraud was shown, and the court was convinced of their regularity and permitted them to be introduced. The court was given ample opportunity to inspect the books, and did so to his satisfaction. Even if there were slight inaccuracies in the books, that would not have excluded them from introduction as evidence. In the case of *Bower* v. *Smith,* 8 *Ga.* 77, it was said that "the irregularities in the books should be exceedingly gross and palpable, to justify the court in arresting the evidence from that tribunal whose peculiar province it is to judge of the credibility of testimony."

4. The court properly refused the request to charge as set out in the fourth ground of the motion for new trial. The court gave the correct portion of the instruction requested, relative to Fourcher's alleged unauthorized use of Bush's automobile, and as to his liability for reasonable hire for its use, provided the evidence disclosed any unauthorized use of the machine by Fourcher, but declined to add the following: "And it would not be necessary for you to find that Fourcher used the machine every day, if you find he made a practice of using it." The evidence disclosed no contract for hire of the machine; on the contrary, the counter-claim was for its unauthorized use. As well put by counsel for defendant in error in his brief, "had this language been used, the jury would have been justified in making Fourcher liable for the entire amount of hire claimed, if they found that Fourcher made a 'practice of using it.' What would he have been liable for, had he made a practice of using it; say once a month for the seven months which it was in his care? Under the above language he would have been liable for $50 a month for the entire period; which would have been palpably wrong and unlawful." The question of hire for the alleged unauthorized use of the automobile was also fully and completely dealt with by the court in several other parts of the charge. There was no error on the part of the court in eliminating this language. In order for the refusal of a request to

charge to be a ground for a new trial, the entire request must be correct; if a part be good and a part bad, the court will not be required to separate the two, but may refuse the request. 7 Enc. Dig. Ga. R. 629. The charge of the court clearly indicates that the plaintiff would be liable for the hire for any unauthorized use he made of the machine. He clearly would not be legally liable for a month's hire if he used the machine for only two or three days.

5. The fifth ground of the motion for new trial complains of a portion of the charge of the court upon the question of ratification by the defendant of work done upon his bicycle. The charge excepted to is inapt in expression, and, if it had been the *only* reference to this subject, might have misled the jury, but we do not think that the use of the words complained of, " or accepted the property," in the court's charge, in the connection in which they were used, could have misled the jury, and the alleged harmful effect that it might have had upon the jury is forced and strained, when all of the sentence containing these words is considered. The sentence containing the alleged error is as follows: "If you find the charge reasonable and that authority was given, or, if authority was not given, that it was ratified by defendant, that he, after knowing it, agreed to it or accepted the property, then he would be liable." In other words, the court stated that if the work done was ratified by the defendant accepting it with the property, knowing that it had been done, he would be liable. The question of ratification is clearly explained in the charge of the court a number of times in other language than that above quoted. When the whole sentence, to say nothing of the entire charge, is taken into consideration, it is not probable that the jury misunderstood the law upon the question of ratification. *Brown* v. *Matthews,* 79 *Ga.* 1 (4 S. E. 13); *Wilson* v. *State,* 69 *Ga.* 226; *Smalls* v. *State,* 105 *Ga.* 669 (4) (31 S. E. 571). Although the principal may expressly declare that he will not sanction the unauthorized act, a ratification may be shown from his act of acceptance. *Byrne* v. *Doughty,* 13 *Ga.* 53 (4); *Haney School Furniture Co.* v. *Hightower Institute,* 113 *Ga.* 295 (38 S. E. 761). It is well settled in Georgia that it is not essential that the principal should expressly ratify by word or writing; it may be done by implication or by the subsequent acts

or conduct of the parties. "A ratification may be express, or implied from the acts or silence of the principal. A ratification once made can not be revoked." Civil Code, §3019. "Slight circumstances and small matters will sometimes suffice to raise the presumption of ratification." *Byrne* v. *Doughty,* supra; *Strong* v. *West,* 110 *Ga.* 387 (35 S. E. 693) ; 1 Am. & Eng. Enc. Law, (2d ed.) 1195: *Noble* v. *Burney,* 124 *Ga.* 964 (53 S. E. 463). Our Supreme Court, in dealing with the question of ratification, in the case of *Noble* v. *Burney,* supra, adopts the following language from Graves v. Horton, 38 Minn. 66 (35 N. W. 568) : "It is true that agency may be proved from the habit and course of dealing between the parties, that is, if one has usually or frequently employed another to do certain acts for him, or has usually ratified such acts when done by him, such person becomes his implied agents to do such acts." See also, *McDowell* v. *McKenzie,* 63 *Ga.* 613; *Wilkes* v. *McClung,* 32 *Ga.* 510 (2) ; *Weaver* v. *Ogletree,* 39 *Ga.* 588.

Fourcher had been doing this kind of work for Bush for a number of years, and receiving the orders to do the work in a manner similar to that used in connection with the bicycle. The work was done on Bush's bicycle and he received the benefit.

*Judgment affirmed.*